CASE 22—PETITION ORDINARY—SEPTEMBER 22.

## Graves vs. Tilford.

APPEAL FROM FAYETTE CIRCUIT COURT.

G. assigned two notes to T., in April, 1861—one payable at Vicksburg, Miss., 1st November, 1861, and the other at New Orleans, La., on the 1st January, 1862; presentation and suit were prevented by non-intercourse resulting from the war; and, on the 22d November, 1862, T. sued G. on the assignment. *Held*—That the enforcement of payment having been rendered impossible by hostilities, which prevented intercourse, plaintiff was entitled to judgment.

JUDGE ROBERTSON DELIVERED THE OPINION OF THE COURT:

On the 4th of March, 1861, Clement Davis, a citizen and resident of the State of Mississippi, gave his promissory note to Carroll & Corbair, for $161, payable on the 1st of November, 1861, at the banking-house of Brown & Johnson, at Vicksburg. And on the 27th of April, 1861, William C. Graves, to whom it had been assigned, again, for $151 88, assigned it to John B. Tilford, of Lexington, Kentucky. At the same time the said Graves, for the consideration of $149 15, assigned to the said Tilford another note for $160, executed by A. C. Daniel, of Mississippi, on the 6th of March, 1861, and payable to James Carroll on the 1st of January, 1862, at the house of Parish & Horns, in the city of New Or-

leans, and which had been assigned to the said Graves by the payee.

On the 22d of November, 1862, Tilford sued Graves on these notes in two several actions, which were afterwards consolidated. Each petition averred that nothing had ever been paid on either note, and alleged the same facts to show that Graves was then legally liable and suable on the promises implied by his assignment, to-wit: That, before the notes became presentable, both presentation and suit were prevented by the civil war, which had resulted in total non-intercourse between Kentucky and Mississippi and Louisiana, and the actual and legal occlusion of the courts of those States. On an issue on that matter the circuit court rendered judgment on each note for the amount paid for it by Tilford to Graves.

Whether, on these facts, the judgment was right, is the only question for our consideration.

A statute of Kentucky having made promissory notes assignable so as to pass the legal title to the assignee, the law, as long settled by this court, implies, on a simple assignment without any special agreement, a promise by the assignor to refund the consideration of the assignment, if the note be not justly demandable, or if, by the obligor's insolvency or removal from the jurisdiction within which he resided at the date of the assignment, the assignee, by ordinary diligence, could not coerce payment; and, as a logical sequence, the law implies an undertaking by the assignee to use the required diligence, and a guarantee by the assignor that, when the note is presentable for payment, the obligor shall be able to pay, and be liable and suable for the amount of the note.

According to this principle, thus conclusively established, shall the assignee or the assignor lose by the intervention of military events which, without the fault of either, prevented both presentation and suit when and ever since payment became demandable? It was not possible for the assignee to present either note for payment, or to sue for non-payment, *nor could the assignor have done either had he never made an assignment.* And the diligence required or expected of the

assignee was no more than, standing in the same shoes, to do all the assignor himself could have done had he never bailed the notes. The supervening *status* of the war cut off all commercial intercourse between the citizens of the belligerent parties, and closed the courts of Mississippi and Louisiana against the appellee. And this insuperable obstacle had continued when these suits were brought, when they appeared to be hopelessly indefinite in duration. Was it the appellee's duty to await all the possible contingencies of this unlimited suspension of all remedy? Had it been ordinary delay, incident to all legal remedy, he would have been obliged to abide its final results, and, until he had diligently passed through the ordeal, and still, by proper diligence, failed to make the debt, he could not have maintained an action against the appellant as assignor.

But, by extraordinary and inexorable necessity, the obligors became both inaccessible and non-suable; and the debts themselves were subjected to sequestration; and thus the implied guarantee of the assignor had been broken, and, thereby, his liability to these suits became immediately fixed, whereby he relapsed into the condition of creditor in which he stood before the assignment, and the assignor was absolved from the duty of doing more or waiting longer.

This court has decided, that if the obligor, after the assignment of his note, and before, by ordinary diligence, he could be sued on it, remove beyond the jurisdiction of the State in which he resided at the time of the assignment, the assignee is not bound to follow him, but has instant recourse against the assignor.

According to that construction, or rather illustration, of the contract implied by a simple assignment, the facts pleaded and admitted in this case ought, *a fortiori*, to dispense with the duty of impossible demand by suit or otherwise, and to entitle the assignee to these actions against the assignor as soon as the debts became due, unless the parties to the assignment apprehended such obstruction and the assignee should be presumed to have taken on himself all the hazards of its possible and contingent occurrence.

Graves vs. Tilford.

But the price paid, which was the customary per centage on the purchase of ordinary bills, clearly indicates that the assignee neither charged nor received any consideration for the risk of such an extraordinary contingency; and this fact repels all presumption that either party then contemplated any such belligerent outlawry, or actual and prolonged occlusion, as a probable event.

Nor was there sufficient cause for any such apprehension; for, although Mississippi had, just before the execution of the notes, passed an ordinance of secession, and *Sumpter* had been bombarded a few days before the assignment, yet all this portended only a transient insurrection, and did not foreshadow such an incredible and *quasi* international war as, months afterwards, interdicted all commercial intercourse between the antagonist sections, and, as between the citizens of each, closed all the courts.

Nor was such a war either apparent or recognized before August, 1861, when the President issued his proclamation of non-intercourse, and treated the seceding States as belligerents. Until then intercommunication was kept up between the sections by mail and otherwise; and we have no reason to doubt that, had the notes fallen due before that time, the amount of them might have been collected.

A mere ordinance of secession was only declared insurrection, not war, either in fact or in law; and had the Mississippi ordinance been, *per se*, war, then the assignment of the notes in Kentucky was without any consideration, either legal or actual, to the assignee, who, therefore, was entitled to restitution of the value he paid for nothing.

We are, therefore, of the opinion that the judgment of the circuit court was right. Wherefore, it is affirmed.